UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHERRY HORSEY,

                              Plaintiff,
                                                        5:17-CV-1356
v.                                                      (GTS/ML)

ADT LLC, f/k/a ADT Sec. Servs., LLC.,

                              Defendant.
_____

APPEARANCES:                               OF COUNSEL:

SHERRY HORSEY
  Plaintiff, *Pro Se*
P.O. Box 2832
Syracuse, NY 13220

OGLETREE, DEAKINS, NASH, SMOAK &           JENNIFER A. RYGIEL-BOYD, ESQ.
STEWART, P.C.
  Counsel for Defendant
10 Madison Avenue, Suite 400
Morristown, NJ 07960

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this *pro se* employment discrimination action filed by

Sherry Horsey ("Plaintiff") against ADT LLC ("Defendant"), is Defendant's motion for summary

judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, Defendant's motion is

granted and Plaintiff's Amended Complaint is dismissed.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Amended Complaint

Generally, in her Amended Complaint, Plaintiff asserts two claims under Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"): (1) a claim that Defendant discriminated against her on the basis of her religion and failed to provide her with reasonable religious accommodations; and (2) a claim that Defendant retaliated against her for pursuing accommodations related to her need to attend religious services and meetings. (Dkt. No. 8 [Pl.'s Am. Compl.].)

More specifically, Plaintiff alleges that she is a Jehovah's Witness and ordained minister, which requires her to attend meetings on Thursday night and Sunday morning, a requirement of which she made her managers aware on multiple occasions throughout her employment. (*Id.*) Plaintiff alleges that Defendant had been allowing her to work a night-shift schedule that gave her Thursday and Sunday off every week, but Defendant refused to allow her to have both Thursday and Sunday off when she bid on and accepted a day-shift, despite its being aware of her need for religious accommodation. (*Id.*) Plaintiff also alleges that, when she continued to request this accommodation, Defendant responded by using "bullying tactics," such as attempting to force her to take a different day-shift rather than simply changing her days off in her existing shift schedule and requiring her to use her paid leave time if she could not find someone to cover her shifts on those days. (*Id.*) Finally, Plaintiff alleges that Defendant failed to effect her shift transfer in a timely manner, gave her verbal and written discipline due to her missing work on the relevant days after she used all her paid leave time (including warning her that she could be terminated if the unexcused absences continued), and constructively discharged her through creating an intolerable working environment. (*Id.*)

### B.     Undisputed Material Facts on Defendant's Motion for Summary Judgment

Plaintiff did not provide a response to Defendant's Statement of Undisputed Material

Facts as required by the Local Rules of this Court.  N.D.N.Y. L.R. 7.1(a)(3) ("The opposing party shall file a response to the Statement of Material Facts.  The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises.").  This is so even though she was specifically advised of the potential consequences of failing to respond.  (Dkt. No. 49, Attach. 1 [attaching Notification of the Consequences of Failing to Respond to a Summary Judgment Motion to Defendant's motion]); Dkt. No. 4, at 2 [acknowledging receipt of courtesy copy of, among other things, Local Rule 7.1 and page 40 of the Court's *Pro Se* Handbook which, further advises litigants of these consequences].)  As a result, even considering Plaintiff's *pro se* status, her failure to respond according to the Local Rules entitles the Court to deem much of Defendant's Statement of Material Facts to be admitted.  *See* N.D.N.Y. L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."); *Sankara v. Montgomery*, 16-CV-0885, 2018 WL 4610686, at *4 (N.D.N.Y. June 25, 2018) (Dancks, M.J.) (noting that the Court will accept a movant's statement of facts as true if a *pro se* plaintiff has not properly responded despite being specifically advised of the possible consequences of failing to respond to the motion) report and recommendation adopted by 2018 WL 3408135 (N.D.N.Y. July 13, 2018) (Scullin, J.).  However, out of special solicitude to Plaintiff and because of the relatively small amount of evidence submitted for this motion, the Court has exercised its discretion to make an effort to determine whether there is admissible evidence that disputes any of Defendant's asserted facts.  *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a

3

court is not required to consider what the parties fail to point out . . . , it may in its discretion opt to conduct an assiduous review of the entire record even where one of the parties has failed to file such a statement.").

As a result, the following facts were asserted and supported with accurate record citations by Defendant in its Statement of Material Facts and not contradicted by any admissible evidence submitted along with the parties' papers for Defendant's motion for summary judgment. (Dkt. No. 49, Attach. 3 [Def.'s Rule 7.1 Statement].)

1.      Defendant operates a large national dispatch center in Rochester, New York ("the Center") where it employs hundreds of Customer Service Representatives.

2.      Customer Service Representatives serve the critical role of, among other things, taking calls from residential and small business customers on alarm-handling issues. This includes assisting a customer with an alarm that is going off at the customer's location.

3.      The Center is staffed 24 hours per day, seven days per week, 365 days per year.

4.      In order to have the necessary coverage in place to immediately respond to emergency situations, the Center has a "Resource Desk," which is responsible for the complex task of scheduling the various shifts available for Customer Service Representatives to work.

5.      Customer Service Representatives may bid on available shifts, which ADT posts on an ongoing basis.

6.      When a Customer Service Representative leaves his or her employment, his or her shift does not remain intact. Rather, the Resource Desk assesses coverage needs at that time, determines what shifts are needed, and posts shifts for bidding.

7.      ADT is dedicated to providing its employees with a positive and productive work

environment free from discrimination and has implemented an Equal Employment Opportunity policy that, among other things, sets forth reporting procedures that employees can use if they believe discrimination has occurred.

8. Plaintiff applied for a call center position at the Center in December 2015.

9. Plaintiff was interested in obtaining a first-shift day position.

10. During Plaintiff's job interview, Team Manager Scott Tripp told her that he was hiring employees for second-shift positions, in which employees would work 30 hours per week from 4:00 p.m. to 10:00 p.m.; but Plaintiff had the opportunity to select the days she wanted to work from the available shift options.

11. Plaintiff selected a Friday-to-Tuesday work schedule with Wednesdays and Thursdays off.

12. Plaintiff accepted this position and began her employment on January 6, 2016.

13. During her first six weeks, Plaintiff attended daily training at the Center on weekdays (Monday-to-Friday).

14. Once she completed the training course, Plaintiff began her selected Friday-to-Tuesday shift, which included working on Sundays.

15. On May 11, 2016, Plaintiff resigned her employment effective immediately, stating that she needed to move to Syracuse due to an "unstable living environment" that required her to "relocate for family safety."

16. Plaintiff was "stressed out" by her living situation and "didn't know what to do."

17. She "didn't want to have to commute back and forth [between Syracuse and Rochester] because [she] didn't think [she could] do it."

18.     Within weeks of her resignation and move to Syracuse, Plaintiff realized she had made an impulsive decision and reapplied for a position at the Center.

19.     Defendant rehired Plaintiff in June 2016.

20.     At that time, Plaintiff had the opportunity to review available shifts and schedules, and to pick the one that she wanted.

21.     Although she still wanted a first-shift position, the available first-shift schedules conflicted with her religious services; so Plaintiff selected a second-shift position working Thursdays through Mondays, with Tuesdays and Wednesdays off.

22.     Plaintiff knowingly selected and agreed to work a shift that included both Sundays and Thursdays "[w]ith the hopes of having [her schedule] revised."

23.     Plaintiff's reemployment began on June 24, 2016.

24.     Plaintiff worked this shift for approximately one month, including on the Thursday evenings of June 30, July 7, July 14, and July 21, 2016, and on the Sunday evenings of June 26 and July 3, 2016.

25.     In July 2016, Plaintiff's work schedule was changed to working Monday, Tuesday, Wednesday, Friday, and Saturday from 2:00 p.m. to 10:30 p.m.[1]

26.     Plaintiff wanted Thursdays and Sundays off to accommodate her religious needs.

---

[1]     Defendant asserts in its Statement of Facts that this change was the result of Plaintiff receiving a different evening shift for which she had "bid"; however, the portion of the deposition transcript cited by Defendant does not support that assertion. (Dkt. No. 49, Attach. 3, at ¶ 25 [Def.'s Rule 7.1 Statement]; Dkt. No. 49, Attach. 8, at 33-34 [Pl.'s Dep.][in which Plaintiff states that, for the relevant change in July, she was granted a "revision" of "the shift that [she] was already on"].) Defendant does not point to any other evidence to support its assertion that this change was the result of a "bid" for a different shift rather than a request for a revision of Plaintiff's existing shift. However, because there appears to be no dispute that the shift changed at this time, this revised asserted fact has been included as undisputed.

27.     Plaintiff worked this shift, which allowed her to be off on Thursdays and Sundays, from July 2016 to approximately September 24, 2016.

28.     Despite having obtained a shift that accommodated her religious needs and that allowed her to attend her religious services on Thursdays and Sundays, Plaintiff voluntarily gave up that shift for a day-shift position.

29.     Plaintiff explained this decision during her deposition, stating that "[a]s a single parent, it made . . . it better for me to be there for my son.  Even spiritually, there's activities throughout the week with school and other things.  I . . . just needed to be there more as a mom."

30.     Rather than following the proper bidding procedure for a day-shift, Plaintiff asked Defendant to place her on a shift that was being vacated by a resigning employee.

31.     In her email to an employee of Defendant dated September 5, 2016, Plaintiff wrote the following:

> I have been struggling to find a day shift since I started here back in January 2016 and since my recent rehire date 6/24/16.  Due to circumstances beyond my control I had to relocate back to Syracuse NY.  I would like to make ADT a career.  However since I have moved back to Syracuse it has taken its toll on my energy level because of the night driving. Not to mention the high risk of safety at night.  Working a day shift would work best for so many reasons[,] since I am a mother and have a disabled husband to take care of.

32.     In response to this email, Defendant required Plaintiff to adhere to its bidding procedure in accordance with company policy.

33.     Consequently, Plaintiff bid for and received a day shift that required her to work Friday-though-Tuesday from 9:00 a.m. to 3:00 p.m.; Plaintiff thus requested and received a shift that required work on Sunday morning to mid-afternoon, which conflicted with her stated

religious needs.

34. Plaintiff worked Sunday mornings on September 25, October 2, October 9, October 23, and November 27, 2016, while on this shift.

35. Plaintiff used paid leave time (where available) for other Sundays when she chose to be absent.

36. Despite the fact that Plaintiff had chosen a shift that required her to work on Sunday mornings, almost immediately after accepting her new shift, Plaintiff stated to Defendant that she did not want to work on Sundays from 9:00 a.m. to 3:00 p.m.

37. In order to accommodate her request not to work on Sunday mornings or Thursday evenings, Defendant offered Plaintiff a day-shift for the hours of 8:30 a.m. to 5:00 p.m. with Saturdays and Sundays off.

38. This shift would allow Plaintiff to have Sundays off and to attend religious services in Syracuse on Thursday evenings.

39. Plaintiff initially accepted this offered shift, but then changed her mind and rejected it in favor of her existing shift.[2]

40. Human Resources Generalist Elizabeth Slater and Unit Manager Terrence Reid

---

[2] Defendant asserts in its Statement of Facts that Plaintiff first requested to change the times of the offered shift to 8:00 a.m. to 4:30 p.m.; however, the pages of the deposition transcript cited by Defendant do not appear in Defendant's submissions in support of its motion for summary judgment, and the Court found no other admissible evidence that readily supports the assertion that Plaintiff requested that time change. (Dkt. No. 49, Attach. 3, at ¶¶ 42-43 [Def.'s Rule 7.1 Statement].) However, an email from Human Resources Generalist Elizabeth Slater to Plaintiff dated December 9, 2016, substantiates the assertion that Plaintiff had initially accepted the offered shift but later declined it in favor of her existing shift. (Dkt. No. 49, Attach. 19.) The Court has therefore altered Defendant's asserted fact to reflect the available admissible evidence.

met with Plaintiff on December 2, 2016, at which time they asked Plaintiff why she had rejected the offered shift.

41.     Plaintiff responded that she did not want to start work before 9:00 a.m., so that she could get her 17-year-old son to the bus for school in the mornings.

42.     Ms. Slater and Mr. Reid contacted the Resource Desk and determined that they could offer Plaintiff a shift that would allow her to be completely off on Thursdays and Sundays, by working Monday, Tuesday, Wednesday, Friday, and Saturday from 9:00 a.m. to 5:00 p.m.

43.     On December 5, 2016, Ms. Slater and Mr. Reid met with Plaintiff again to further discuss her request.

44.     Plaintiff rejected the new offered shift for personal reasons.[3]

45.     As she explained to Ms. Slater in an email of December 6, 2016, Plaintiff decided to stay with her existing shift "based on [her] family needs," noting that, "[a]s was discussed this schedule is best for me because of my family obligations."

46.     Even though Plaintiff rejected Defendant's proposal, Ms. Slater continued to evaluate the issue.

47.     On December 9, 2016, Ms. Slater sent Plaintiff an email recapping the process up to that point, including the shifts that they had offered to her that had been rejected.

48.     In her email of December 9, 2016, Ms. Slater also set forth the following options:

---

[3]     Again, the page Defendant cites in support of its assertion was not present in the selections of the deposition transcript submitted to this Court; however, an email of December 9, 2016, from Ms. Slater to Plaintiff substantiates the assertion that Plaintiff refused this shift "for personal reasons." (Dkt. No. 49, Attach. 3, at ¶ 49 [Def.'s Rule 7.1 Statement]; Dkt. No. 50, Attach. 11, at 2.)  The Court has therefore altered Defendant's asserted fact to reflect the available admissible evidence.

(a) Plaintiff could keep her scheduled shift and attempt to find Sunday coverage each week (such as swapping shifts with a teammate or using the "bail out board"); (b) Plaintiff could bid on shifts that did not conflict with her religious services as they came available; and/or (c) Plaintiff could seek a job transfer through Defendant's careers page.

49.    Ms. Slater closed her email of December 9, 2016, by specifically inviting Plaintiff to continue the dialogue, stating, "[I]f you have a requested accommodation, please provide it to me via reply e-mail so that it can be considered."

50.    On December 10, 2016, Plaintiff responded to Ms. Slater's email, accusing Defendant of religious discrimination and failing to accommodate her religious needs.

51.    She did not explain in this email why either the shift she had worked from July to September 2016 (which afforded her both Thursdays and Sundays off) or the shifts she had been offered and rejected were not acceptable from a religious standpoint.

52.    On December 14, 2016, Ms. Slater responded to Plaintiff's email of December 10, 2016, stating that she had been informed that Plaintiff had applied for short-term disability and Family Medical Leave Act ("FMLA") leave earlier that week and that she would wait for the disability process to move forward to respond substantively to Plaintiff's email.

53.    On April 28, 2017, Plaintiff submitted her voluntary resignation from employment with Defendant, although she asserted that she believed she had been constructively discharged.

###    C.    Parties' Briefings on the Pending Motion

####        1.    Defendant's Memorandum of Law

Generally, in its motion for summary judgment, Defendant makes three arguments.  (Dkt. No. 49, Attach. 2, at 20-29 [Def.'s Mem. of Law].)  First, Defendant argues that Plaintiff cannot

establish a claim for employment discrimination and/or failure to accommodate her religious beliefs because she has not alleged, much less provided evidence of, any adverse employment action taken against her by Defendant. (*Id.* at 20-27.) More specifically, Defendant argues the following: (a) the record establishes that it attempted to accommodate her stated religious needs in multiple ways, including offering her multiple shifts that would allow her to attend her religious services and providing her with options to work around her existing work schedule if she did not wish to change it; and (b) Plaintiff has not shown an adverse action because her employment was not terminated, her voluntary resignation was not a constructive discharge because there is no evidence of an intolerable work situation, she was not subjected to any formal discipline, and warning her about the consequences of unscheduled absences and requiring her to use paid leave time to attend religious ceremonies during work hours do not constitute adverse actions under the prevailing law. (*Id.*)

Second, Defendant argues that Plaintiff has not properly exhausted her claim for retaliation because she did not include it in her charge to the Equal Employment Opportunity Commission ("EEOC") and that claim is not reasonably related to her discrimination charge given that she did not check the retaliation box in the charge or allege facts that would have provided notice that she was claiming retaliation. (*Id.* at 27-28.)

Third, Defendant argues that, in the alternative, Plaintiff's retaliation claim must be dismissed because the record fails to establish any retaliatory adverse action. (*Id.* at 28-29.)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in her opposition memorandum of law, Plaintiff attempts to dispute factual assertions made by Defendant in its memorandum of law. (Dkt. No. 50 [Pl.'s Opp'n Mem. of

Law].)  Specifically, Plaintiff argues as follows: (a) the first time she resigned from ADT, she did so for personal reasons and left on good terms with both her manager and the company; (b) Defendant offered her the chance to bid for a day-shift knowing that she required religious accommodations and told her that any shift she picked could be updated to reflect her religious accommodations, but they then refused to change her days off after she picked a shift; (c) Defendant forced her to use paid leave time or to switch days weekly with other employees in place of granting her religious accommodations, which caused her to lose pay and experience stress; (d) she was forced to work some Sundays because she was unable to take those days off or to find someone to cover her shift on those days; (e) Defendant did not transfer her to the day-shift manager even after transferring her to her new shift; (f) by refusing to change her days off and forcing her to use paid leave time, Defendant denied her religious accommodations; (g) Defendant retaliated against her for seeking religious accommodations by attempting to force her to take a new shift rather than modifying her current shift schedule; (h) she continued to be discriminated and retaliated against by her management and the Human Resources Department, which had a negative impact on her emotional state and her blood pressure; (i) after calling in to take off a few Sundays without using her paid leave time, she was informed that good attendance was expected and that unscheduled absences beyond the allowed personal time would be addressed according to Defendant's attendance policy; and (j) Defendant never informed her that by taking a different shift she would be forfeiting her right to receive religious accommodations. (*Id.* at 3-13.)

### 3.    Defendant's Reply Memorandum of Law

Generally, in its reply memorandum of law, Defendant makes two arguments.  (Dkt. No.

54, at 4-9 [Def.'s Reply Mem. of Law].)  First, Defendant argues that Plaintiff's discrimination claim must fail for the following reasons: (a) she has not pointed to any evidence of discipline or other adverse action; (b) she has not provided evidence of an intolerable work situation that a reasonable person could conclude resulted in a constructive discharge and, in particular, has not provided any medical or other evidence substantiating her claim that her work environment in particular was causing her mental or physical harm; (c) she has failed to provide any evidence to dispute the efforts Defendant made to accommodate her needs; and (d) there is no requirement for Defendant to show that it suffered undue hardship as a result of Plaintiff's requested accommodation because it is undisputed that Defendant provided Plaintiff with different options to accommodate her needs.  (*Id.* at 6-8.)

Second, Defendant argues that Plaintiff's retaliation claim must be dismissed because she has not disputed her failure to exhaust her available administrative remedies with regard to this claim and has not provided any admissible evidence of an adverse action.  (*Id.*)

## II.    LEGAL STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2).  As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that

there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

Finally, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III. ANALYSIS

### A. Whether Defendant Is Entitled to Summary Judgment on Plaintiff's Religious Discrimination/Failure-to-Accommodate Claim

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memoranda of law. (Dkt. No. 49, Attach. 2 [Def.'s Mem. of Law]; Dkt. No. 54 [Def.'s Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

Title VII of the Civil Rights Act makes it unlawful for an employer "to fail to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 135 S. Ct. 2028, 2031 (2015). Generally, to establish a prima facie case of discrimination under Title VII, the plaintiff must show that (1) she is a member of a protected class, (2) her job

performance was satisfactory, (3) she suffered adverse employment action, and (4) the action occurred under conditions giving rise to an inference of discrimination. *Brooks v. City of Utica*, 275 F. Supp. 3d 370, 377 (N.D.N.Y. 2017) (Kahn, J.) (quoting *Demorat v. Zegarelli*, 451 F.3d 140, 151 [2d Cir. 2006]). "If the plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action." *Brooks*, 275 F. Supp. 2d at 377 (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 [2d Cir. 2008]). If the defendant can provide such a reason, the plaintiff must then show that the employer's determination was in fact the result of unlawful discrimination. *Brooks*, 275 F. Supp. 2d at 377 (quoting *Holcomb*, 521 F.3d at 138).

Additionally, and more specific to this case, Title VII makes it unlawful for an employer to fail to make "reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Brooks*, 275 F. Supp. 2d at 379 (quoting *Zacharowicz v. Nassau Health Care Corp.*, 177 F. App'x 152, 154 [2d Cir. 2006]). Such a failure-to-accommodate claim requires the plaintiff to show the following three elements: (1) she held a bona fide religious belief conflicting with an employment requirement; (2) she informed her employer of this belief; and (3) she was disciplined for failure to comply with the conflicting employment requirement." *Brooks*, 275 F. Supp. 2d at 379. This Court has previously recognized that "discipline" equates to "adverse employment action" for the purposes of this analysis. *Id.* (citing *Siddiqi v. N.Y.C. Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 370 [S.D.N.Y. 2008]). If the plaintiff can establish a prima facie case, "the inquiry turns to whether the employer complied with the statutory requirement to offer the plaintiff a reasonable accommodation for his or her religious belief, unless doing so would cause the employer to suffer

an undue hardship." *Chavis v. Wal-Mart Stores, Inc.*, 265 F. Supp. 3d 391, 399 (S.D.N.Y. 2017) (quoting *Baker v. The Home Depot*, 445 F.3d 541, 546 [2d Cir. 2006]).

Defendant argues that Plaintiff cannot establish a prima facie case for the alleged failure to accommodate because Plaintiff has not shown that she suffered an adverse employment action. For the purposes of a Title VII discrimination-based claim, an adverse employment action is defined as "a materially adverse change in the terms and conditions of employment" that is "more disruptive than a mere inconvenience or an alteration of job responsibilities"; examples include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly decreased material responsibilities." *Brooks*, 275 F. Supp. 2d at 377 (citing *Galabya v. N.Y.C. Bd. of Edu.*, 202 F.3d 636, 640 [2d Cir. 2000]; *Sanders v. N.Y.C. Human Rights Res. Admin.*, 361 F.3d 749, 755 [2d Cir. 2004]); *accord Chavis*, 265 F. Supp. 3d at 399.

It is undisputed that Plaintiff was not terminated from her employment by Defendant, but that she resigned. (Dkt. No. 49, Attach. 22, at 2.) Plaintiff alleges that she was constructively discharged as a result of Defendant's conduct towards her. "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 229 (2d Cir. 2004). As to the intent requirement, the plaintiff must show either specific intent or that "the employer's actions were deliberate and not merely negligent or ineffective." *Petrosino*, 385 F.3d at 229-30. As to the intolerability of the work atmosphere, the Court must assess this factor "objectively by reference to a reasonable person in the employee's position." *Id.* at 230.

Plaintiff argues that her managers and other representatives of Defendant created an

intolerable work environment for her by (a) "bullying" her through attempting to force her to take

a different shift rather than changing one of her off-days on her existing shift, (b) forcing her to

"make [her] own accommodations" by using her paid leave time to take off Sundays, (c) causing

her stress by failing to assist her in finding other employees to work Sundays for her on certain

weeks, (d) failing to transfer her to a day-shift manager upon her shift change on September 25,

2016, until her medical leave on December 13, 2016, and (e) sending her emails telling her they

were not going to give her the specific accommodation she was requesting and warning her that

unexcused absences could result in discipline pursuant to the attendance policy. (Dkt. No. 50, at

2-13 [Pl.'s Mem. of Law].) As an initial matter, the Court finds that there is no admissible

record evidence that these actions were taken by Defendant *deliberately* to make Plaintiff's work

experience intolerable. In any event, beyond alleging that the stress of having to "make [her]

own accommodations" caused anxiety, high blood pressure, and her to feel "unsafe,"[4] Plaintiff

---

[4]     The Court notes that Plaintiff asserts these allegations of adverse health effects in
both her Amended Complaint her opposition memorandum of law, but she asserts for the first
time in her opposition memorandum of law that her doctor told her it was not good for her to
keep working "under these conditions." (Dkt. No. 50, at 11 [Pl.'s Opp'n Mem. of Law].)
However, Plaintiff has not provided any admissible record evidence to support these allegations,
and the fact that she notarized her opposition memorandum of law does not convert that legal
memorandum into admissible evidence. *See* N.D.N.Y. L.R. 7.1(a)(2) & (3) (noting that
affidavits are properly evidence to be considered on a motion for summary judgment, but "[a]n
affidavit must not contain legal arguments"); *Helen Cross v. Colvin*, 16-CV-0111, 2016 WL
7011477, at *2 n.1 (N.D.N.Y. Dec. 1, 2016) (Suddaby, C.J.) (citing cases finding "briefadavits"
to be impermissible). Additionally, even if the Court were to credit these allegations, the fact
that Plaintiff might have suffered some mental and/or physical effects due to stress is not
material; rather, the standard is whether the work environment was objectively intolerable, not
whether Plaintiff subjectively found it intolerable. *See Rother v. New York State Dep't of Corr.
and Comm. Supervision*, 970 F. Supp. 2d 78, 95 (N.D.N.Y. 2013) (Kahn, J.) ("However severe
Plaintiff's reaction may have been to the treatment she received, and however many entities may
have deemed Plaintiff disabled or unable to work as a result of that treatment, the intolerability of

18

has offered no admissible record evidence establishing how Defendant's actions made her work environment so objectively intolerable that she was forced to quit. The fact that she was required to engage in a dialogue with her supervisors and the Human Resources Department (including participating in two in-person meetings), request time off, contact co-workers to exchange shifts, continue to work with her previous supervisor, and receive a few emails about the process and her attendance does not, in light of the evidence present on this motion, reasonably establish that Defendant had made Plaintiff's work environment *intolerable* from an objective standpoint. Consequently, the Court finds that no reasonable factfinder could conclude that Plaintiff was constructively discharged.

Plaintiff also argues that Defendant failed to accommodate her religious needs by forcing her to use her paid leave time in order to meet her religious obligations. However, multiple courts have found that requiring an employee to use vacation days to avoid conflicts with the employee's religious obligations does not constitute an adverse employment action; rather, such action is itself a reasonable accommodation. *Chavis*, 265 F. Supp. 3d at 399-400; *see Guy v. MTA New York City Transit*, 10-CV-1998, 2012 WL 4472112, at *8 (E.D.N.Y. Aug. 6, 2012) (noting that "[g]enerally, it is a reasonable accommodation of an employee's observance of the Sabbath for an employer to require the employee to use his or her vacation days or to take unpaid leave,' and finding that allowing the plaintiff to use paid and unpaid leave to observe the Sabbath each week rather than changing his work schedule to give him the Sabbath off was sufficient under the law); *Durant v. Nynex*, 101 F. Supp. 2d 227, 233-34 (S.D.N.Y. 2000) (finding that allowing the plaintiff to swap shifts on an ongoing basis with another employee and use vacation

working conditions is an objective test.") (collecting cases).

days to allow her to not work on her religion's Sabbath were reasonable accommodations for her religious needs).  Additionally, the fact that Plaintiff might not have had enough paid leave or other personal time to cover every Thursday and/or Sunday that she would have needed covered does not by itself make the use of personal time an adverse action or an unreasonable accommodation.  *See Moore v. City of New York*, 15-CV-6600, 2018 WL 3491286, at *15 (S.D.N.Y. July 20, 2018) (noting that an accommodated work schedule that made it more likely, though not guaranteed, that the plaintiff would not be scheduled to work overtime on Friday evenings was a reasonable accommodation because a "reasonable" religious accommodation does not require employers to guarantee that the employment conflict will be completely eliminated).

Plaintiff additionally argues that Defendant's warnings that she would be subject to discipline if she continued to have unexcused absences constituted an adverse action against her.  However, Plaintiff has not shown that these warnings were accompanied by any change in the terms and conditions of her employment.  Consequently, any warnings that she might be subject to discipline if she continued to accrue unexcused absences do not alone constitute an adverse employment action.  *See Chang v. Safe Horizons*, 254 F. App'x 838, 839 (2d Cir. 2007) (finding that "oral and written warnings" by the plaintiff's supervisor did not constitute materially adverse actions from the view of a reasonable employee where the employer was following its disciplinary policy in issuing those warnings and there was no evidence that the disciplinary policy was applied inconsistently); *Betterson v. HSBC Bank, USA, N.A.*, 139 F. Supp. 3d 572, 586-87 (W.D.N.Y. 2015) ("[N]egative performance evaluations or written warnings, without an accompanying change in the terms and conditions of employment, will not rise to the level of an

adverse employment action.") (collecting cases); *Delaney v. La Hood*, 07-CV-0471, 2009 WL 3199687, at *19 (E.D.N.Y. Sept. 30, 2009) (collecting cases). Indeed, the failure to warn Plaintiff of the negative consequences of failing to comply with the attendance policy could have given her a reason to complain if she had been disciplined pursuant to that attendance policy.

Lastly, the Court finds that, even if Plaintiff could establish a prima facie case, Defendant's attempts to accommodate her needs were indisputably reasonable. "An employer's accommodation offer is reasonable where it 'eliminates the conflict between the employment requirement and the religious practice.'" *Chavis*, 265 F. Supp. 3d at 400; *see Baker*, 445 F.3d at 548 (noting that an accommodation may be unreasonable if it causes an employee to suffer an inexplicable diminution in his employee status or benefits, or otherwise imposes a significant work-related burden on the employee without justification). It is undisputed that Defendant offered Plaintiff a number of options to accommodate her need to not work on Thursday nights and Sunday mornings: (a) they initially allowed her to have a night-shift schedule that provided her with both Thursdays and Sundays off; (b) after she took a day-shift and expressed a need for accommodations with that shift, Defendant offered Plaintiff various different shifts, including a 8:30 a.m. to 5:00 p.m. shift that would have allowed her to have both Thursday evening free and Sunday off, as well as a 9:00 a.m. to 5:00 p.m. shift that would have given her both Thursday and Sunday off, but she rejected both options in order to keep her existing shift that required her to work Sundays; (c) Defendant told her she could use her paid leave time to avoid working Sundays on her existing shift; (d) Defendant told her she could find other employees to work Sunday each week for her or she could switch a day with another employee each week to cover her Sunday shift; and (e) she could continue to look for and bid on posted shifts that would meet

her requirements for both Thursdays and Sundays off. (Dkt. No. 50, Attach. 11, at 2.) Plaintiff herself seems to acknowledge that Defendant offered her a day-shift that would have given her both Thursday and Sunday off (seemingly exactly what she was hoping for), but she rejected that shift for "personal reasons," and now argues that Defendant's efforts were not sufficient because it should not have required her to change from her 9:00 a.m. to 3:00 p.m. shift to a 9:00 a.m. to 5:00 p.m. shift, but should have rather changed her second day off from Wednesday to Sunday in her existing 9:00 a.m. to 3:00 p.m. shift. However, an employer is not obligated to provide an employee with the exact accommodation she requests, but only one that reasonably accommodates her religious needs. *See Ansonia Bd. of Edu. v. Philbrook*, 479 U.S. 60, 68-69 (1986) (holding that the employer need only offer any reasonable accommodation in the absence of undue hardship, not the specific accommodation proposed by the plaintiff); *Moore*, 2018 WL 3491286, at *15 (noting that employees are not entitled to hold out for the most beneficial accommodation, and that a disruption to personal time with family as a result of an offered accommodation is not a basis for a religious accommodation claim). No reasonable factfinder could conclude that Defendant's offer of this shift in particular was not reasonable simply because it would have required Plaintiff to work two hours per day beyond what her existing shift required, particularly because there is no admissible record evidence establishing that she would have been expected to work those two additional hours without additional pay; the fact that Plaintiff might have preferred leaving at 3:00 p.m. or having a shorter workday because of her family does not make Defendant's efforts to accommodate her religious needs unreasonable.

For all of the above reasons, the Court grants Defendant's motion for summary judgment on Plaintiff's discrimination/failure-to-accommodate claim.

**B.      Whether Defendant Is Entitled to Summary Judgment on Plaintiff's Retaliation Claim**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memoranda of law.  (Dkt. No. 30, Attach. 2 [Def.'s Mem. of Law]; Dkt. No. 36 [Def.'s Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

As an initial matter, Defendant argues that Plaintiff cannot properly bring this claim as part of this action because she did not raise retaliation as a grounds for relief before the EEOC. "Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Itanliane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001). "However, a claim that was not presented to the EEOC may still be pursued where the claim is 'reasonably related' to the claims that were brought before the agency." *Tanvir v. New York City Health & Hosps. Corp.*, 480 F. App'x 620, 621 (2d Cir. 2012).  A claim is found to be reasonably related in three situations: (1) "where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination"; (2) where the claims allege "retaliation by an employer against an employee for filing an EEOC charge"; and (3) "where the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 352 (E.D.N.Y. 2013) (quoting *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402-02 [2d Cir. 1993]).  "In determining whether claims are reasonably related, the focus should be on the factual allegations made in the charge itself, describing the discriminatory conduct about which a plaintiff is grieving," and the central

23

question is whether the EEOC complaint gave "adequate notice to investigate discrimination on both bases." *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006); *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003).

In her complaint with the New York State Division of Human Rights, Plaintiff alleged that she was discriminated against by Defendant based on creed/religion due to the fact that Defendant denied her religious accommodations for formal worship; of note, she did not check the box for "retaliation" on the same page. (Dkt. No. 49, Attach. 6, at 3.) She alleged that the acts of discrimination she suffered were harassment or intimidation, denial of training, denial of a promotion or pay raise, denial of accommodations for her religious practices, and refusal to transfer her to the day-shift manager upon her transfer to a day-shift. (*Id.* at 4.) In her narrative, Plaintiff alleged as follows: (a) she did not have a problem getting religious accommodations until she was rehired by Defendant and struggled to find a shift that would allow her to attend her religious meetings; (b) upon realizing that working a night-shift caused problems for her related to commuting from Syracuse (and with attending her Thursday night religious meeting because of the commute), she requested that she be given a specific day-shift without going through the normal bidding process for that shift; (c) when her request to circumvent the bidding process was denied, managers helped her bid on a different day-shift; (d) upon being granted the shift on which she had bid, she requested to have that shift schedule modified so that she would have Thursday and Sunday off; (e) rather than changing her schedule, Defendant required her to use her vacation time or flex time for time off to attend her religious meetings, or to trade days with a willing coworker; (f) after she used all her paid leave time, she had to call off work without excuse, which could have led to disciplinary action; (g) she was denied training as a result of not

24

being promptly transferred to the day-shift manager because her night-shift manager did not have enough time to dedicate to her training; and (h) at some point between when she was rehired and when she obtained a day-shift schedule, Defendant had changed her night-shift schedule to allow her to have Thursdays and Sundays off. (*Id.* at 5-6.) Nowhere in this complaint does Plaintiff state that any of the actions taking by Defendant were in retaliation for any protected activity.

Plaintiff does not allege retaliation for filing her EEOC charge, but merely retaliation for conduct giving rise to her failure-to-accommodate claim. As a result, Plaintiff's retaliation claim must fall within the scope of the EEOC investigation of her allegation of discrimination in order to be reasonably related to the EEOC charge. The Court finds that the EEOC charge minimally meets this requirement. Although Plaintiff never alleged in the EEOC charge that Defendant's actions following her request for accommodations upon her transfer to a day-shift were in retaliation for requesting those accommodations, the fact that Plaintiff faced push-back against her request where Defendant had previously granted her request to change her schedule on a different shift is minimally sufficient to give the New York State Department of Human Rights and EEOC adequate notice of a potential retaliation claim. *See Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 438-39 (E.D.N.Y. 2010) ("[W]hen the EEOC charge alleges facts from which a reader can infer a link between protected activity–for example, a complaint about perceived discriminatory treatment–and a subsequent adverse employment action, a retaliation claim asserted in a subsequent lawsuit will be reasonably related to the EEOC charge.") (collecting cases). As a result, the Court must consider the merits of Plaintiff's retaliation claim.

To establish a prima facie case of retaliation under Title VII, the plaintiff must show the following four elements: (1) the plaintiff participated in a protected activity; (2) the defendant

knew of the protected activity; (3) the plaintiff suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019). For the purposes of a retaliation claim, an adverse employment action is one that is "materially adverse," meaning that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006). However, "petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Burlington N. and Santa Fe Ry. Co.*, 548 U.S. at 68. For the purposes of the prima facie case, the requisite causal connection "can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Wiley v. SUNY Plattsburgh*, 407 F. Supp. 3d 119, 130 (N.D.N.Y. 2019) (Sharpe, J.). If the plaintiff can establish a prima facie case of retaliation, the burden shifts to the employer "to articulate some legitimate, non-retaliatory reason for the employment action." *Zann Kwan v. Andalez Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013). If the defendant can do so, the burden shifts back to the plaintiff to show that the defendant's proffered reasons are pretextual, and in particular that "retaliation was the but-for cause of the adverse action, and not simply a substantial or motivating factor in the employer's decision." *Zann Kwan*, 737 F.3d at 845; *D'Andrea v. Nielsen*, 765 F. App'x 602, 604-05 (2d Cir. 2019).

The Court finds that Plaintiff has failed to establish that she suffered an adverse employment action as required for a prima facie claim. Although Plaintiff alleges that Defendant refused to accommodate her religious needs after her transfer to a day-shift in the same way it had previously accommodated them in her night-shift, none of the actions Defendant took would have dissuaded a reasonable worker from requesting religious accommodations. The Court notes

that, although Plaintiff argues that Defendant tried to "bully" her into taking a shift change in retaliation for requesting accommodations, she was never forced to take any shift change or threatened with consequences if she failed to take a shift change, and in fact she refused to take a different shift without any consequences.  Similarly, although the record shows that Plaintiff was warned that continued unexcused absences could result in discipline, there is no admissible record evidence that she was actually disciplined for her absences after she used all her paid leave time.  Thus, these actions had no discernable practical impact on Plaintiff and thus do not constitute an adverse employment action.

Plaintiff also alleges that Defendant (a) failed to transfer her from the night-shift manager to the day-shift manager after she began her day-shift, which resulted in her losing the opportunity for training, and (b) required her to use her paid time off or engage in the process of swapping days with other employees or bidding on new shifts in order to accommodate her religious needs.  As to the failure to transfer her to the day-shift manager, Plaintiff argues that this action denied her training, which "hindered [her] growth and lowered [her] performance and scores."  (Dkt. No. 8, at 18 [Pl.'s Am. Compl.].)  Apart from this vague reference to her performance, Plaintiff has offered no factual allegation (much less admissible record evidence to sustain her arguments on summary judgment) that continuing to be managed by her former night-shift manager actually impacted her work-related performance to any degree that made her vulnerable to reprimand or discipline; there is no admissible record evidence that Defendant had any issues with Plaintiff's work-related performance (apart from her unexcused absences) while she was on the day-shift.  Nor has Plaintiff provided any admissible record evidence that the lack of training prevented her from applying for or obtaining a promotion or any other opportunity.

All in all, Plaintiff has not presented any admissible record evidence to establish that the failure to change her manager was anything more than a minor annoyance or petty slight. Based on the admissible record evidence, no reasonable fact finder could conclude that Defendant's handling of Plaintiff's voluntary shift-change was materially adverse.

As to Defendant's actions in requiring Plaintiff to "make her own accommodations," no reasonable factfinder could conclude that these actions were adverse employment actions or, in the alternative, that they were causally related to her accommodation request. Paid leave time is provided to enable employees to have time off on days they would otherwise be required to work based on their schedule; the Court cannot see how requiring Plaintiff to use her paid leave time in just such a way was materially adverse to Plaintiff, particularly because there is no admissible record evidence to show that she lost appreciable pay or other benefits as a result of using her leave time or swapping days with other employees.[5] *See Schmidt v. Canadian Nat. Ry. Corp.*, 232 F. App'x 571, 574-75 (7th Cir. 2007) (finding no adverse action where defendant altered plaintiff's work schedule, temporarily reassigned him to a job that was no less prestigious or more difficult, and induced him to spend his vacation time to meet his religious obligations). In terms of causal connection, although temporal proximity of an action to the protected activity is generally sufficient to establish causal connection for the purposes of a prima facie case of retaliation, the Court finds that the specific circumstances of this case make that general

---

[5]    Plaintiff does allege in the Amended Complaint that, if someone took her Sunday shift in a given week rather than swapping that shift with her for another shift, she did lose pay. (Dkt. No. 8, at 14 [Pl.'s Am. Compl.].) Granted, the Amended Complaint is verified and, thus, the allegations in the Amended Complaint are admissible record evidence on a motion for summary judgment. However, Plaintiff has not provided any admissible record evidence showing how often she was forced to give her shift away in this manner or how much pay she lost as a result.

presumption inapplicable.  *See Gordon v. New York City Bd. of Edu.*, 232 F.3d 111, 117 (2d Cir. 2000) (noting that, for the purposes of a prima facie case, proof of causation can be shown indirectly by showing that "the protected activity was followed closely by discriminatory treatment").  In particular, although the alleged adverse actions all occurred almost immediately after her request to change her days off upon moving to the day-shift, it is undisputed that (a) Defendant had been aware of Plaintiff's need for religious accommodations since December 2015 or January 2016, when she was initially hired, and (b) Defendant had altered her previous night-shift to allow her to have off both Thursday and Sunday from July 2016 to September 24, 2016.  The undisputed record therefore shows that Defendant not only did not retaliate against Plaintiff for her initial requests for religious accommodations, but worked with her to provide her with the exact accommodation she requested while she was on the night-shift.  Additionally, the "loss" of Sunday as an off-day occurred only after Plaintiff voluntarily chose a shift that required working on Sunday.  The Court is also mindful of the fact that, as already discussed, Defendant offered Plaintiff at least one day-shift that would have met all her stated religious needs, but Plaintiff rejected that shift (and others that accommodated her needs to a degree) for personal reasons (i.e., she did not want to have to change from her 9:00 a.m. to 3:00 p.m. schedule to an 8:30 a.m. to 5:00 p.m. or 9:00 a.m. to 5:00 p.m. schedule because of personal family considerations).  Given that the Court has already found that Defendant provided reasonable accommodations based in part on these offered shifts, it would not be reasonable to find that Defendant retaliated against Plaintiff by forcing her to use her paid leave when she chose to reject those offered shifts.  Although Defendant had altered Plaintiff's night-shift schedule in the past, the fact that it did not wish to alter her chosen shift schedule once she moved to the day-

shift (preferring that Plaintiff instead choose a different shift that had already been formulated by the Resource Desk to meet the needs of the company for those times of day) does not transform its actions into retaliation for protected activity; that it chose to allow an alteration of her shift schedule for one shift does not mean that it was required to then allow such alteration on any other shift schedule that Plaintiff bid on in the future. Additionally, it is undisputed that Plaintiff was at all times entitled (and, in fact, encouraged by Defendant) to bid on any available shift that met her religious needs, and there is no admissible record evidence establishing that Defendant ever denied her an accommodating shift on which she had properly bid. As already discussed above, Defendant reasonably accommodated Plaintiff's religious needs, and the fact that it did not provide her with the exact accommodation she requested does not establish that Defendant's actions constituted unlawful retaliation. Given these undisputed facts, the Court cannot say that the mere temporal proximity between her change to a day-shift and the alleged failure to accommodate suggests a causal connection between her requests for accommodations and Defendant's actions.

Lastly, even if Plaintiff was able to establish a prima facie case, Defendant has provided a non-retaliatory reason for its actions (i.e., changing Plaintiff's day off on her existing schedule would undermine the Resource Desk's work of creating schedules that ensured adequate coverage during high-volume days and times) and Plaintiff cannot show that a retaliatory motive related to her request for religious accommodations was the but-for cause of Defendant's actions; even if she had never made an accommodations request, she would have needed to use paid time, day-swapping, or another approved method to be excused from work on any Sunday while she continued to work her existing (voluntarily chosen) shift that required her to work on Sunday.

*See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (holding that the but-for causation standard applies to Title VII retaliation claims, which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer").  Finally, Plaintiff has not provided any admissible record evidence establishing that other employees were granted changes in a similar day-shift schedule (whether for religious or non-religious reasons) such as she requested.

For all of the above reasons, the Court grants Defendant's motion for summary judgment as to Plaintiff's retaliation claim.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 49) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 8) is **<u>DISMISSED</u>**.

Dated: February 4, 2020
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge